UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

JEREMY PANIAGUA,

                              Plaintiff,

            -v-

WALTER KIDDE PORTABLE EQUIPMENT, INC.

                              Defendant.

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/27/16

15 Civ. 1858 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On February 7, 2005, a fire erupted in plaintiff Jeremy Paniagua's New York City

apartment, killing his mother and causing Paniagua, then age 11, to sustain severe injuries.  The

statute of limitations was tolled for nearly seven years while Paniagua was a minor.  Paniagua

now brings this products liability action, alleging that the smoke alarm present in the apartment

on the night of the fire malfunctioned, denying Paniagua and his mother sufficient warning to

enable them to escape safely.  Paniagua claims that that alarm was an ionization smoke alarm

made by defendant Walter Kidde Portable Equipment, Inc. ("Kidde").[1]

Kidde now moves for summary judgment, on the ground that Paniagua has not adduced

evidence sufficient to support a finding that the smoke alarm in the apartment was a Kidde

product.  For the reasons that follow, Kidde's motion is granted.

---

[1] The Complaint names Kidde and Kidde Fire Safety (USA) as defendants, *see* Dkt. 1, Ex. A
("Compl."), but Kidde denies that Kidde Fire Safety (USA) has ever been a recognized legal
entity, representing that the company's proper name is Walter Kidde Portable Equipment, Inc.,
Dkt. 4. ("Answer"), ¶¶ 37–38.  In his submissions, Paniagua, like Kidde, treats Kidde as the sole
defendant.  *See* Dkt. 37, at 1.  Accordingly, the Court treats Paniagua's claims as against Kidde
only.

## I.      Background

### A.      Factual Background[2]

#### 1.      The Parties and the Model No. 916 Alarm

Paniagua, today age 22, is a citizen of New York.  Compl. ¶ 36.

Kidde is a North Carolina corporation that designs, manufactures, and distributes smoke alarms.  Answer ¶ 37.  Relevant here, by 2002, Kidde had begun manufacturing the smoke alarm brand at issue: its Model No. 916 alarm, which uses ionization smoke detection technology.[3]  *See* Pl. 56.1, ¶¶ 41–42; Def. Supp. 56.1, ¶¶ 41–42.  The Model No. 916 alarm is battery-operated and equipped with a flashing red LED light, which is designed to "rapidly flash[] every 2 seconds" when "products of combustion are sensed."  Pl. 56.1, ¶¶ 39–43; Def. Supp. 56.1, ¶¶ 39–43.

#### 2.      The Fire

In the years leading up to the fire, Paniagua lived with his mother, Jeanette Montanez, and his sister Mallory Claudio in an apartment owned by the New York City Housing Authority

---

[2] The Court's account of the facts is derived from the parties' submissions in connection with Kidde's motion, including Kidde's Rule 56.1 statement, Dkt. 33, Ex. 1 ("Def. 56.1"); the declaration of Peter J. Fazio in support of summary judgment, Dkt. 33 ("Fazio Decl."), and accompanying exhibits; Paniagua's Rule 56.1 statement, Dkt. 38 ("Pl. 56.1"); the declaration of James T. Hunt in opposition to summary judgment, Dkt. 39 ("Hunt Decl."), and accompanying exhibits; Kidde's supplemental counterstatement of facts, Dkt. 41, Ex. 3 ("Def. Supp. 56.1"); and the supplemental declaration of Peter J. Fazio in support of summary judgment, Dkt. 41 ("Fazio Supp. Decl."), and accompanying exhibits.  Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein.  Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  The Court also refers to representations made by

("NYCHA").  Def. 56.1, ¶ 1; Pl. 56.1, ¶¶ 1, 23; Def. Supp. 56.1, ¶ 23; Hunt Decl., Ex. B

("FDNY Rpt."), at 2.  The apartment, located at 123 East 112th Street in New York City, was

equipped with one smoke alarm, mounted on the hallway ceiling.  Pl. 56.1, ¶¶ 23–24; Def. Supp.

56.1, ¶¶ 23–24.  Paniagua and Claudio have both attested that the smoke alarm was battery-

operated, a fact they recall from having helped their mother change its batteries.  Hunt Decl., Ex.

C ("Paniagua Aff."), ¶¶ 11–16; id., Ex. D ("Claudio Aff."), ¶¶ 8, 10–11; Pl. 56.1, ¶¶ 25–27; Def.

Supp. 56.1, ¶¶ 25–27.

Around midnight on February 7, 2005, a fire broke out in the apartment.  FDNY Rpt. 2.

Paniagua, Montanez, and Claudio were asleep inside.  *See* Pl. 56.1, ¶ 32; Def. Supp. 56.1, ¶ 32;

Paniagua Aff. ¶ 18; Claudio Aff. ¶ 12.  Claudio was awakened by the sound of the smoke alarm.

Claudio Aff. ¶ 12.  She exited her bedroom and saw thick "pitch black" smoke in the hallway.

Pl. 56.1, ¶¶ 32–33, 37; Def. Supp. 56.1, ¶¶ 32–33, 37.  She attests that all she could see through

the smoke was "a red blinking light on the ceiling."  Pl. 56.1, ¶ 34; Def. Supp. 56.1, ¶ 34.

According to an incident report prepared by the New York City Fire Department (the

"FDNY"), the fire originated in Paniagua's living room, engulfed the walls, ceiling, and contents

---

counsel at the pre-motion conference on November 20, 2015.  Citations to "Tr." refer to the
transcript of that conference.

[3] According to a trade association, the "two most commonly recognized smoke detection
technologies" are ionization and photoelectric technology.  NAT'L FIRE PROT. ASS'N, *Ionization
vs. Photoelectric* (Feb. 26, 2014), http://www.nfpa.org/safety-information/for-consumers/fire-
and-safety-equipment/smoke-alarms/ionization-vs-photoelectric.  Ionization smoke alarms "have
a small amount of radioactive material between two electrically charged plates, which ionizes the
air and causes current to flow between the plates.  When smoke enters the chamber, it disrupts
the flow of ions, thus reducing the flow of current and activating the alarm."  *Id.*  Photoelectric
alarms, by contrast, "aim a light source into a sensing chamber at an angle away from the sensor.
Smoke enters the chamber, reflecting light onto the light sensor[,] triggering the alarm."  *Id.*
Ionization smoke alarms are said to be more responsive to flaming fires, whereas photoelectric
smoke alarms are said to be more responsive to smoldering fires.  *Id.*

of that room and the hallway, and spread into the bathroom, where Paniagua and Montanez were located.  Pl. 56.1, ¶ 38; Def. Supp. 56.1, ¶ 38; FDNY Rpt. 2.  Montanez was killed.  Pl. 56.1, ¶ 2; Def. 56.1, ¶ 2.  Paniagua was removed from the bathtub by a firefighter and sustained respiratory burns and second- and third-degree burns to his upper body.  FDNY Rpt. 2.  He was transported to the hospital in critical condition.  *Id.*  Claudio, who was rescued from her bedroom, sustained minimal injuries.  *See id.*

### 3.     Paniagua's Claims and Kidde's Defenses

Paniagua's Complaint alleges that the alarm in the apartment on February 7, 2005 ("the Alarm") was a Model No. 916.  *See* Compl. ¶¶ 14, 68, 73–74.  It alleges that the ionization smoke alarms Kidde manufactured, including the Model No. 916, were "unreasonably dangerous, hazardous and defective" in that they "sound[ed] between fifteen to twenty minutes later than similar photoelectric alarms in smoldering fires."  *Id.* ¶¶ 8, 12.  This defect, the Complaint alleges, proved deadly on the night of February 7, 2005, because the alarm in Paniagua's apartment "did not sound to provide a timely warning of the fire that had started in the family's living room."  *Id.* ¶ 14.  The Complaint alleges that Paniagua "would have escaped with his mother unharmed if his apartment had been equipped with a non-defective photoelectric smoke detector which would have given timely warning of the [smoldering] fire."  *Id.* ¶ 21.

Kidde denies these allegations.  Answer ¶¶ 8, 12, 14, 21.  Most relevant here, it argues that there is no non-speculative basis on which a jury could find that the alarm in the apartment on the night in question was a Kidde product.

### 4.     Evidence Bearing on the Manufacturer of the Alarm in Paniagua's Apartment

The statute of limitations for Paniagua's claims was tolled until he reached majority, and he did not initiate this lawsuit until nearly 10 years after the fire.  *See* Dkt. 8, at 2.  The passage

4

of time has unavoidably resulted in the disappearance of potentially relevant evidence, including evidence bearing on the issue that is the focus of Kidde's summary judgment motion: whether the Alarm was, in fact, a Kidde product.  *See id*.

Most centrally, although Paniagua and Claudio recall that some form of battery-operated smoke alarm was installed in their apartment, they do not claim to recall its manufacturer, brand, or model number.  *See* Paniagua Aff. ¶¶ 11–16; Claudio Aff. ¶¶ 8, 10–11.[4]  And no direct evidence survives as to the make or model of the Alarm.  The Alarm was not preserved; no photographs depicting it exist; and no eyewitness has come forward to identify the Alarm as a Kidde product.  Nor has any physical evidence been adduced that identifies Kidde as the manufacturer of that particular alarm.  Def. 56.1, ¶ 17; Pl. 56.1, ¶ 17.[5]

In the face of this gap, Paniagua has pointed to four items (or categories) of evidence, which, he argues, together would permit a factfinder to identify Kidde as the Alarm's manufacturer.  For the purposes of resolving this motion, the Court assumes *arguendo* that this evidence would all be admissible at trial.

In fact, the Court has substantial doubt as to the admissibility of the latter two sets of evidence.  The third consists of NYCHA records which Paniagua claims to have obtained outside of the discovery process in this case, through a Freedom of Information Law (FOIL) request

---

[4] Neither Paniagua nor Claudio was deposed.  The Court therefore relies on their affidavits, which Paniagua submitted along with his opposition to summary judgment.

[5] To the contrary, Kidde submitted, as an attachment to its reply brief, a letter from the NYCHA certifying that "there are no records revealing the specific model [of smoke alarm] that was installed in [Paniagua's apartment] on the night of the fire."  Def. Supp. 56.1, ¶ 47; Fazio Supp. Decl., Ex. 9.

made to the NYCHA by, Paniagua states, a third party, a "Joseph Fleming."[6]  *See* Hunt Decl.,

Ex. A.  The fourth consists of a report prepared by the FDNY after the fire; Paniagua does not

state how he obtained this document.  *See* FDNY Rpt.  These documents came to light in

discovery when, in response to a request by Kidde to Paniagua for admissions as to evidence

identifying Kidde as the Alarm's manufacturer, Paniagua furnished these records to Kidde.  *See*

Pl. Br. 13–14.  However, as of the close of discovery, and indeed as of an ensuing pre-motion

conference held to discuss Kidde's anticipated summary judgment motion, these documents had

not been certified by the NYCHA or the FDNY as an official or business record.  *See* Tr. 10.

Nor did Paniagua seek to depose a representative of either agency, which might have served to

authenticate and/or to explain these records, or to take any depositions.[7]  *See* Tr. 32–34.  It

appears that, during the summary judgment briefing process, Paniagua belatedly obtained

---

[6] The record does not reveal the date or substance of Fleming's FOIL request.  However, at the
pre-motion conference, Paniagua's counsel stated that Fleming is a firefighter.  Tr. 30.  A letter
from the NYCHA to Fleming, which Kidde submitted after Paniagua submitted the records the
NYCHA had produced to him, states that Fleming had sought "information that would help
identify the type of smoke alarm that was installed in [Paniagua's apartment] . . . on the night of
the fire."  Fazio Supp. Decl., Ex. 9.

[7] Kidde also did not seek to depose a representative from either agency.  *See* Tr. 7–8.  Kidde
takes the position that it was Paniagua's burden as plaintiff to adduce evidence sufficient to
create an issue of fact as to whether Kidde was the Alarm's manufacturer, and that, with
Paniagua having failed to do so, Kidde had no obligation to pursue third-party discovery.  *See* Tr.
12–13, 15, 18, 21, 24.  Kidde separately argues that the documents Paniagua adduced,
purportedly from the NYCHA and FDNY, would be inadmissible at trial, and therefore cannot
be considered on summary judgment.  *See* Def. Supp. 56.1, ¶¶ 20–22, 28–30 (citing Fed. R.
Evid. 803(6) (hearsay exception for business records of regularly conducted activity); *id.* 902(11)
(business records may be certified by custodian or other qualified person); Fed. R. Civ. P.
56(c)(2)(A) (party may object that material cited to support or dispute a fact on a summary
judgment motion is inadmissible)); *see also Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001)
(evidence relied upon in affidavit in opposition to summary judgment must be admissible);
*Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) ("[I]n order to
survive [defendants'] motion for summary judgment, it was incumbent upon [plaintiffs] to
identify sufficient *admissible* evidence . . . so as to demonstrate that there existed a genuine issue
of material fact.") (emphasis added).

certifications of these records by the NYCHA and FDNY. *See* Hunt Decl., Ex. A, at 1 (certification by NYCHA law department, dated January 14, 2016); FDNY Rpt. 1 (certification by FDNY official, dated January 2016; the precise date is illegible). But, as of the close of discovery, the records were uncertified and unauthenticated. *See* Tr. 10. The Court assumes the admissibility of these records here solely because, as explained below, even assuming the records' proper authentication and admissibility, summary judgment for Kidde would still be required, as the assembled evidence would not permit a finding that the Alarm was a Kidde product.

With that in mind, the four categories of evidence on which Paniagua relies for the claim that Kidde was the manufacturer of the Alarm are:

1. ***The recollections of Paniagua and Claudio***: Paniagua and Claudio attest that the smoke alarm in their apartment was battery-operated, and that they recall helping their mother change the batteries. Paniagua Aff. ¶¶ 11–16; Claudio Aff. ¶¶ 8, 10–11. Claudio further attests that, during the fire, she saw a red blinking light on the ceiling. Claudio Aff. ¶ 14.

2. ***NYCHA records regarding the July 2004 replacement of the Alarm***: The NYCHA was subpoenaed by Kidde to produce "all documents . . . within your possession in reference to [the February 7, 2005 fire] . . . and any and all records pertaining to fire alarms that may have been installed in [Paniagua's housing development] for the years 2002-2006." Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6. In response, the NYCHA produced one relevant document: an apartment inspection form that indicates that on July 14, 2004, some seven months before the fire,[8] the NYCHA

---

[8] The parties dispute whether the inspection form is properly read to indicate that the date that the NYCHA replaced the smoke alarm in Paniagua's apartment was July 14, 2004 (as Paniagua claims) or May 7, 2004 (as Kidde claims). *See* Def. 56.1, ¶ 8; Pl. 56.1, ¶ 8. (The uncertainty arises because, with neither party having sought testimony from the NYCHA, the notations on the form relating to the date of the replacement are unexplained.) The dispute is irrelevant,

replaced the smoke alarm in Paniagua's apartment.  Def. 56.1, ¶¶ 7–8; Pl. 56.1, ¶¶ 7–8, 31; Def. Supp. 56.1, ¶ 31.

    **3. *Two NYCHA purchase orders***:  In response to Fleming's FOIL request, the NYCHA produced from its Financial Management System screen shots of two purchase orders for smoke alarms.  *See* Pl. 56.1, ¶¶ 7, 29.  The first, dated August 14, 2002, is for Model No. 916 battery-operated ionization alarms.  *Id.* ¶ 29; Def. Supp. 56.1, ¶ 29.  The second, dated March 15, 2005, is for hardwired ESL No. 320 photoelectric smoke alarms.  Hunt Decl., Ex. A, at 4.

    **4. *An FDNY incident report***:  An FDNY incident report prepared about the fire states that Paniagua's apartment was equipped with a single battery-operated smoke alarm.  Pl. 56.1, ¶ 21; Def. Supp. 56.1, ¶ 21.

    **B.    Procedural History**

    On December 14, 2014, Paniagua brought this action in New York State Supreme Court in Bronx County against Kidde, United Technologies Corporation, and the NYCHA.  *See* Dkt. 1, ¶ 2; Compl.  As to Kidde, the only defendant against whom Paniagua has pursued his claims,[9] the Complaint brings claims of strict products liability, breaches of express and implied warranties, violations of the New York Uniform Commercial Code, negligence, negligent misrepresentation, and negligent infliction of emotional distress.  Compl. ¶¶ 66–146.  Each claim stems from a common premise: that, because of its defective design, the Alarm "failed to provide sufficient warning to allow escape from a dangerous fire."  *Id.* ¶ 57.

---

however, because Kidde acknowledges that the NYCHA replaced the smoke alarm on one of those two dates, Def. Supp. 56.1, ¶ 31, and there is no evidence that the alarm was replaced again before the fire.

[9] On March 3, 2015, Paniagua voluntarily dismissed his claims against the NYCHA.  Dkt. 1, ¶ 6. Paniagua never served United Technologies Corporation.  *See* Dkt. 11.

On March 12, 2015, Kidde removed the case to this Court, based on diversity jurisdiction. *See* Dkt. 1.  On March 13, 2015, Kidde answered.  Dkt. 4.

Discovery closed on October 17, 2015.  *See* Dkt. 9, ¶ 5.  On November 20, 2015, the parties appeared for a pre-motion conference, at which the Court addressed at length with counsel the evidence bearing on Kidde's anticipated motion for summary judgment.  *See* Tr.

On December 18, 2015, Kidde filed such a motion, arguing that the evidence would not permit a jury to find, other than by means of speculation, that the Alarm in Paniagua's apartment on the night of the fire was a Kidde product.  Dkt. 32.  In support, Kidde filed a Rule 56.1 Statement, Def. 56.1, a memorandum of law, Dkt. 34 ("Def. Br."), and a declaration by defense counsel, Fazio Decl., and accompanying exhibits.  On January 22, 2016, Paniagua filed a brief opposing Kidde's motion, Dkt. 37 ("Pl. Br."), a Rule 56.1 Statement, Pl. 56.1, and a declaration by plaintiff's counsel, Hunt Decl., and accompanying exhibits.  On February 5, 2016, Kidde replied, Dkt. 40 ("Def. Reply Br."), and, in response to exhibits submitted by Paniagua with his opposition papers, filed a supplemental counterstatement of facts, Def. Supp. 56.1, a supplemental declaration by defense counsel, Fazio Supp. Decl., and accompanying exhibits.

## II.     Standards Governing Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) ("[T]he judge must ask . . . not whether . . . the evidence unmistakably favors ones [sic] side or the other but whether a fair-minded jury could

return a verdict for the plaintiff on the evidence presented." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

Where this initial showing has been made, the burden shifts to the non-movant to establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted); *accord DeFabio v. E. Hampton Union Free School Dist.*, 623 F.3d 71, 81 (2d Cir. 2010) (non-movant cannot avoid summary judgment simply by asserting "some metaphysical doubt as to the material facts" (quoting *Jeffreys*, 426 F.3d at 554)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby, Inc.*, 477 U.S. at 252; *accord Miner v. Clinton Cty.*, 541 F.3d 464, 471 (2d Cir. 2008)

(party opposing summary judgment must offer "some hard evidence showing that its version of the events is not wholly fanciful" (internal quotation marks and citation omitted)).

Where the undisputed facts reveal an absence of sufficient proof as to an essential element of the non-movant's claim, factual disputes with respect to other elements cannot defeat a motion for summary judgment. *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011); *see also Celotex*, 477 U.S. at 322–23 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Powell v. Nat'l Bd. of Medical Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) ("[Summary judgment] is appropriate when, after discovery, the [non-movant] . . . has not shown that evidence of an essential element of her case—one on which she has the burden of proof—exists.").

In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## III.    Discussion

Kidde moves for summary judgment on the ground that Paniagua has failed to raise a genuine dispute of fact as to whether Kidde manufactured the Alarm whose alleged defects form the basis of Paniagua's lawsuit. Kidde makes two arguments to this end. First, Kidde argues, under Federal Rule of Civil Procedure 36, that, by failing to timely respond to Kidde's Requests to Admit ("RTAs"), Paniagua should be taken as admitting that he lacks the evidence to support a finding in his favor on this point. Alternatively, Kidde argues, summary judgment is warranted because the evidence adduced in discovery could not sustain a finding in Paniagua's favor. The Court considers these arguments in turn.

11

A.      **Paniagua's Untimely Responses to Kidde's Requests to Admit**

Kidde argues that Paniagua, by failing to timely respond to Kidde's RTAs, effectively admitted the insufficiency of his evidence as to the manufacturer of the Alarm, justifying entry of summary judgment in Kidde's favor.

1.      **Procedural Background**

On September 17, 2015, Kidde timely served Paniagua with RTAs, including RTAs asking Paniagua to admit that he had neither physical nor documentary evidence to support his contention that the Alarm was a Kidde product.  *See* Def. 56.1, ¶¶ 11, 18; Pl. 56.1, ¶¶ 11, 18; Dkt. 9, ¶ 6(d).  On October 7, 2015, Paniagua's counsel produced to Kidde the NYCHA records yielded by Fleming's FOIL request and the FDNY incident report.  *See* Pl. Br. 13–14; Def. Reply Br. 7; Tr. 14.[10]  Within the 30-day period set by Rule 36, however, Paniagua did not provide a formal response to Kidde's RTAs.  *See* Def. 56.1, ¶ 13; Pl. 56.1, ¶ 13.  On October 17, 2015, discovery closed.  Def. 56.1 ¶ 14; Pl. 56.1 ¶ 14.

On October 26, 2015, Kidde submitted a pre-motion letter, consistent with the Court's individual rules, expressing its intention to move for summary judgment.  Dkt. 21.  In it, Kidde argued that Paniagua's failure to respond to Kidde's RTAs operated as an admission, *inter alia*, that Paniagua has no evidence that a Kidde alarm was installed in his apartment on the night of the fire.  *Id.* at 3.

On October 29, 2015, Paniagua served responses to Kidde's RTAs and asked that Kidde deem them timely.  Def. 56.1, ¶ 15; Pl. 56.1, ¶ 15.  Paniagua's responses admitted the following facts:

---

[10] Although the date on which counsel produced Paniagua's and Claudia's affidavits is unclear, Kidde does not claim that these were untimely produced.  The Court assumes *arguendo* that these were produced within the discovery period.

1) That he has no physical evidence to support his contention that any Kidde smoke alarm (including a Model No. 916 alarm) was installed in his apartment on the night of the fire;
2) That he has no physical evidence to support his contention that the NYCHA purchased Kidde smoke alarms for installation in his apartment complex;
3) That he has no physical evidence to support his contention that a Kidde ionization alarm in his apartment failed to sound on the night of the fire; and
4) That Claudio reported hearing a smoke alarm sound on the night of the fire.

Def. 56.1, ¶ 17; Pl. 56.1, ¶ 17.

Paniagua denied, however, the following facts (among others):

1) That he has no documentary evidence to support his contention that any Kidde smoke alarm (including a Model No. 916 alarm) was installed in his apartment on the night of the fire;
2) That he has no information to support his contention that any Kidde smoke alarm (including a Model No. 916 alarm) was installed in his apartment on the night of the fire;
3) That he has no documentary evidence to support his contention that the NYCHA purchased Kidde ionization smoke alarms for installation in his apartment complex; and
4) That he has no information to support his contention that the NYCHA purchased Kidde ionization smoke alarms for installation in his apartment complex.

Pl. 56.1, ¶ 18; Fazio Decl., Ex. 6, ¶¶ 1, 3, 4, 6, 7, 9.

The same day, Kidde notified Paniagua that, given "the date and [Kidde's] pending request to file a [summary judgment motion]," it would not accept Paniagua's responses as timely filed.  Fazio Decl., Ex. 7, at 1; Def. 56.1, ¶ 16; Pl. 56.1, ¶ 16.

On November 2, 2015, Paniagua submitted a response to Kidde's pre-motion letter.  Dkt. 22.  In it, he claimed that Kidde's RTAs were defective, objected to the entry of summary judgment based on his failure to respond to the RTAs, and asked the Court, *nunc pro tunc*, to extend his deadline for responding to the RTAs.  *Id*. at 3–4.[11]

---

[11] The Court treats this request as a motion to withdraw admissions, pursuant to Rule 36(b).  *See* Fed. R. Civ. P. 36(b) ("[A] matter admitted under [Rule 36] is conclusively established unless the court, *on motion*, permits the admission to be withdrawn or amended." (emphasis added)).

### 2.      Applicable Legal Standards

Under Rule 36(a)(1), "[a] party may serve on any other party a written request to admit . . . the truth of any matters . . . relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  A matter is deemed admitted "unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection."  Fed. R. Civ. P. 36(a)(3). A party's admissions pursuant to Rule 36, including admissions derived from a party's failure to respond, may be used for Rule 56 summary judgment.  *Virga v. Big Apple Const. & Restoration Inc.*, 590 F. Supp. 2d 467, 471 (S.D.N.Y. 2008) ("The Second Circuit permits admissions under . . . rule 36(a) to be used for summary judgment." (citing *Donovan v. Carls Drug Co.*, 703 F.2d 650, 651 (2d Cir. 1983))); *SEC v. Batterman*, No. 00 Civ. 4835 (LAP), 2002 WL 31190171, at *5 (S.D.N.Y. Sept. 30, 2002).

However, "the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted."  *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Tripodi*, 913 F. Supp. 290, 294 (S.D.N.Y. 1996).  Rather, Rule 36(b) provides that the Court, on motion, may permit an admission to be withdrawn or amended if (1) "it would promote the presentation of the merits of the action" (2) without "prejudic[ing] the requesting party in maintaining or defending the action on the merits."  Fed. R. Civ. P. 36(b); *Donovan*, 703 F.2d at 652 ("[T]he court has the power to make exceptions to [ ] Rule [36] only when (1) the presentation of the merits will be aided *and* (2) no prejudice to the party obtaining the admission will result." (emphasis in original)).

### 3.      Discussion

Kidde argues that, by not timely responding to the RTAs, Paniagua effectively admitted that he lacks documentary evidence or information to support his claim that a Kidde smoke

alarm was installed in his apartment on the night of the fire, or had been purchased by the NYCHA for installation in Paniagua's apartment complex.  Paniagua argues that he should not be treated as having conceded these points.  He asks the Court to accept his belated responses to Kidde's RTAs, and, under Rule 36(b), to treat as withdrawn any admissions implied from his failure to timely respond to the RTAs.

The Court's judgment is that nothing, in the end, turns on the resolution of this dispute. Prior to the deadline for responding to Kidde's RTAs, Paniagua had furnished Kidde with the documents on which he proposes to rely with respect to the manufacturer of the Alarm, most notably, the documents provided to Fleming in response to his FOIL request.  *See* Tr. 14 (defense counsel conceding this point).  Kidde was fully on notice that Paniagua intended to rely on these documents.  Therefore, even if Paniagua's lapse in failing to respond to the RTAs were held against him, such that Paniagua were treated as admitting that he lacked documentary evidence or information to the effect that the Alarm was a Kidde product, that implied admission would realistically have to be qualified by crediting Paniagua with the materials he had by then already produced to Kidde.[12]  Put differently, Paniagua's failure to respond to the RTAs can in fairness be viewed at most as admitting only that Paniagua did not possess evidence or information as to the Alarm's manufacturer *beyond that which he had already produced*.

---

[12] Kidde cites no authority that would justify the Court in allowing Paniagua's failure to respond to Kidde's RTAs about the state of Paniagua's documentary evidence to override such evidence where it had already been produced.  Allowing a lapse of this nature to eclipse or vitiate the evidence a party had already produced would create unacceptable opportunities for mischief. The ends of justice would be ill-served by allowing a party's lapse in failing to respond to an RTA to be read as admitting a fact (the non-possession of any documents assertedly relevant to a proposition at issue) that all parties know to be untrue.

The practical effect of treating Paniagua's failure to respond as an implied admission would thus be solely to bar Paniagua, without leave of Court, from introducing additional evidence on this point.  At this stage, however, Paniagua does not purport to possess any such additional evidence.  And he does not rely on any in opposing Kidde's summary judgment motion.  Accordingly, even if the Court ruled for Kidde and declined to allow Paniagua to withdraw the admissions fairly implied from his failure to respond to Kidde's RTAs, that admission would not affect the materials cognizable on Kidde's motion for summary judgment.  Further, for the reasons the Court now explains, even permitting Paniagua to make full use of the materials he has mustered, this evidence would not permit a reasonable jury to find that the Alarm was a Kidde product.  The Court, therefore, denies Kidde's bid for summary judgment on this ground as moot.[13]

---

[13] In holding that Paniagua's failure to respond to the RTAs has no bearing on Kidde's summary judgment motion, the Court emphasizes that it does not find Paniagua's failure to respond justified.  On the contrary, this lapse is of a piece with Paniagua's broader disregard during this lawsuit of the Rules of Civil Procedure, the Rules of Evidence, and the case management plan set by the Court.  For example, Paniagua (1) as noted, forewent the ordinary tools of discovery, attempting to rely on uncertified records produced in response to a nonparty's FOIL request; and (2) failed to provide written responses to Kidde's interrogatories or requests for production of documents, both of which were timely served on July 20, 2015.  Def. 56.1, ¶¶ 10, 13; Pl. 56.1, ¶¶ 10, 13.  Moreover, Paniagua has not come forward with any excuse for failing to timely respond to the RTAs.  *See Ng v. HSBC Mortgage Corp.*, No. 07 Civ. 5434 (RRM), 2011 WL 3511296, at *4 (E.D.N.Y. Aug. 10, 2011), *modified*, 2014 WL 4699648 (E.D.N.Y. Sept. 22, 2014) (collecting cases holding that relief "is unavailable to a party that has inexcusably failed to comply with the requirements set forth by Rule 36(a)"); *SEC v. Thrasher*, No. 92 Civ. 6987 (JFK), 1996 WL 460148, at *1 (S.D.N.Y. Aug. 13, 1996) (deeming RTAs admitted where delinquent party "proffer[ed] no meaningful explanation either for his tardiness or for his failure to seek more time from the court to meet his obligations under Rule 36").

### B.      Paniagua Has Not Raised a Genuine Issue of Fact as to Whether Kidde Manufactured the Allegedly Defective Alarm

In arguing that Paniagua's case is deficient on the merits, Kidde asserts that it is entitled to summary judgment because Paniagua has not come forward with evidence that the allegedly defective alarm in Paniagua's apartment on the night of the fire was a Kidde product.  On this point, Kidde is correct.

### 1.      Applicable Legal Standards

Under New York law,[14] a plaintiff who brings a product liability action bears the burden of proving that the defendant manufactured the offending product.  *Winstead v. Phillocraft Inc.*, No. 03 Civ. 3813 (CBM), 2005 WL 2001902, at *5 (S.D.N.Y. Aug. 19, 2005) (applying this requirement to strict-liability, negligence, and breach-of-warranty claims) (collecting cases); *Travelers Indem. Co. of Ill. v. Hunter Fan Co., Inc.*, No. 99 Civ. 4863 (JFK), 2002 WL 109567, at *2 (S.D.N.Y. Jan. 28, 2002) (same); *Healey v. Firestone Tire & Rubber Co.*, 87 N.Y.2d 596, 601 (1996) (plaintiff "must establish by competent proof [ ] that it was the defendant who manufactured and placed in the stream of commerce the injury-causing defective product"); *D'Amico v. Mfrs. Hanover Trust Co.*, 569 N.Y.S.2d 962, 964 (1st Dep't 1991).

---

[14] Because the Court has jurisdiction over this action based on diversity of citizenship, *see* 28 U.S.C. § 1332(a)(1), it applies the choice-of-law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496–97 (1941).  Under New York law, in tort actions, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022, 1031 (2d Cir. 1996) (quoting *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)).  "[I]t is well-established that the situs of a product liability tort for choice-of-law purposes 'is the place of the injury, rather than the location where the allegedly defective product was manufactured.'"  *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 426 (S.D.N.Y. 2013) (quoting *Burnett v. Columbus McKinnon Corp.*, 887 N.Y.S.2d 405, 407–08 (4th Dep't 2009)).  Here, the fire occurred in New York, and the parties rely solely on New York law in their briefs.  *See Giordano v. PGT Indus., Inc.*, No. 04 Civ. 9246 (WCC), 2007 WL 4233002, at *2 (S.D.N.Y. Nov. 30, 2007) (applying New York law in diversity action where parties cited only New York law in their briefs).  The Court, therefore, applies New York law.

"Although the product [at issue] itself is the best and most conclusive proof," *Giordano*, 2007 WL 4233002, at *3 (internal quotation marks and citation omitted), where the product is missing or no longer exists, the manufacturer's identity may be shown by circumstantial evidence. *Healey*, 87 N.Y.2d at 601; *Travelers*, 2002 WL 109567, at *2. However, such evidence "must establish that it is reasonably probable, not merely possible or evenly balanced, that the defendant was the source of the offending product. Speculative or conjectural evidence of the manufacturer's identity is not enough." *Healey*, 87 N.Y.2d at 601–02; *accord In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 591 F. Supp. 2d 259, 266–67 (S.D.N.Y. 2008); *Giordano*, 2007 WL 4233002, at *3; *Phillocraft*, 2005 WL 2001902, at *5.

### 2.    Discussion

Kidde argues that there is a "complete absence" of evidence that identifies Kidde as the manufacturer of the Alarm. Def. Br. 2 (emphasis omitted). In support, it notes that it is undisputed that the Alarm was not preserved and that there is no other physical evidence to support the claim that the Alarm was a Kidde Model No. 916 alarm (or any other Kidde product). Def. Br. 4, 9 (citing Def. 56.1, ¶ 17); *see also* Pl. 56.1, ¶ 17. Moreover, it emphasizes, the NYCHA, which was responsible for installing alarms in the building, has no records that identify the Alarm in Paniagua's apartment as a Kidde product. Def. Reply Br. 2. To the contrary, it notes, an NYCHA records custodian has certified that "there are no records revealing the specific model that was installed in [Paniagua's apartment] on the night of the fire." *Id.* at 2 (citing Def. Supp. 56.1, ¶ 47). Finally, it points out, there are no fact witnesses who "can identify what brand [of alarm] was present in [Paniagua's] apartment." *Id.* at 5. Accordingly, inasmuch as there were at least six companies manufacturing smoke alarms in the United States as of 2004, Kidde argues, it is not reasonably probable that Kidde—as opposed to another company—manufactured the Alarm. *Id.* (citing Def. 56.1, ¶ 19); Def. Br. 9.

18

"Because [Kidde] has made an initial showing that [Paniagua] cannot prove that [Kidde] manufactured the [Alarm], the burden shifts to [Paniagua] to show that there is a genuine issue of material fact with regard to the manufacturer of the [Alarm]."  *Phillocraft*, 2005 WL 2001902, at *5; *see also In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 2008 WL 5188193, at *3 (defendant does not need to establish that someone else caused plaintiff's injuries; rather, "plaintiff[] bear[s] the burden of adducing sufficient evidence to allow a reasonable jury to conclude that it was reasonably probable that [defendant] caused [his] injuries").

Paniagua acknowledges the absence of direct evidence identifying Kidde as the Alarm's manufacturer.  *See* Pl. 56.1, ¶ 17.  He also concedes that there were other manufacturers of smoke detectors at the time.  *Id.* ¶ 19.[15]  But, he argues, there is sufficient circumstantial evidence on which a trier of fact could conclude, other than speculatively, that Kidde manufactured the Alarm.  *See* Pl. Br. 7–12.

Specifically, Paniagua relies on the following evidence:  First, the NYCHA's apartment inspection form indicates that on July 14, 2004, seven months before the accident, the NYCHA

---

[15] For this reason, this case is distinguishable from those where competent proof showed that, during the relevant time period, the defendant was the *exclusive* manufacturer or supplier of the offending product.  *See, e.g.*, *Gassmann v. Eli Lilly & Co.*, 407 F. Supp. 2d 203, 212–13 (D.D.C. 2005) (genuine dispute existed as to whether Eli Lilly caused plaintiff's injuries where witness testified, based on personal knowledge, that Eli Lilly was the "sole and exclusive brand" of DES sold during the relevant time period in the store where plaintiff's mother purchased the drug); *Macek v. CBS Corp.*, 969 N.Y.S.2d 804, 2013 WL 1296750, at *4 (Sup. Ct. N.Y. Cty. 2013) (table decision) (summary judgment for defendant not appropriate where defendant failed to rebut evidence that defendant was the exclusive supplier of asbestos to the United States during the relevant time period); *Moffett v. Harrison & Burrowes Bridge Contractors Inc.*, 698 N.Y.S.2d 109, 111–12 (3d Dep't 1999) (defendant not entitled to summary judgment where record evidence established that defendant was the exclusive distributor of the type of hose in question during the relevant time period); *Ambers v. C.T. Indus., Inc.*, 566 N.Y.S.2d 51, 51–52 (1st Dep't 1991) (triable issue of fact whether defendant manufactured defective uniform where evidence showed defendant's wholly-owned subsidiary was sole provider of uniforms to plaintiff's employer at the time of accident).

replaced the fire alarm in Paniagua's apartment, and there is no record of a replacement between that day and the accident.  Pl. Br. 11 (citing Def. 56.1, ¶ 8).  Second, Fleming's FOIL request yielded two NYCHA purchase orders, which, Paniagua argues, establish that "[a]fter 2002, the NYCHA purchased only two types of fire alarms, ESL Model No. 360 photoelectric alarms and the Kidde battery-powered ionization smoke detector alarm."  *Id.* at 9 (citing Hunt Decl., Ex. A).  Third, the FDNY incident report indicates that the smoke alarm installed in Paniagua's apartment on the night of the fire was battery-operated, a fact corroborated by Paniagua's and Claudio's recollections of helping change the batteries in their family's smoke alarm.  *Id.* (citing FDNY Rpt.; Claudio Aff. ¶ 8; Paniagua Aff. ¶ 12).  Finally, Claudio attests that she saw a "red blinking light on the ceiling" during the fire, a characteristic consistent with the LED light feature of the Kidde Model No. 916 alarm.  *Id.* (citing Claudio Aff. ¶ 14; Hunt Decl., Exs. F, G).  This evidence, Paniagua argues, eliminates the ESL model, which was hard-wired as opposed to battery-powered, and which lacked the red blinking light feature, leaving the Kidde Model No. 916 model as the only possible culprit.  *Id.*

    The flaw in Paniagua's argument, however, is its premise.  The scant evidence he has adduced does not limit the universe of potential models that the Alarm could have been to a Kidde Model No. 916 or an ESL Model No. 360.  Had it done so, then the proof Paniagua has mustered to the effect that the Alarm was battery-operated would enable a trier of fact who credited that proof to exclude the ESL model, and to thereby find that the Alarm was made by Kidde.  But the keystone to Paniagua's argument—that after 2002, the NYCHA installed only

Kidde Model No. 916 ionization alarms and ESL Model No. 360 photoelectric alarms its buildings, to the exclusion of all other models—has no reliable basis in the record.[16]

Paniagua bases this premise on the fact that, in response to Fleming's FOIL request, the NYCHA produced screenshots of only two purchase orders: one for Kidde Model No. 916 ionization alarms, placed on August 14, 2002; and another for ESL Model No. 320 photoelectric alarms, placed on March 15, 2005.  *See* Hunt Decl., Ex. A, at 3–4.  But this production does not carry with it a negative implication that these two models were the only smoke alarms purchased by the NYCHA during the 2002–2005 timeframe.  The NYCHA certification merely reflects that these are the only records possessed by the NYCHA at the time of Fleming's FOIL request that were responsive to that request:  It "certif[ies] that the . . . attached responsive records . . . are true and complete copies of records of the New York City Housing Authority, originals of which are maintained in the regular course of business by the Housing Authority."  *Id.* at 1.  It does not address what the NYCHA's alarm purchase and installation practices were during the period preceding the fire.  That the NYCHA, a decade later, could locate in its files, in response to a FOIL request, only two purchase orders for smoke alarms does not mean that there were no purchase orders for other smoke alarms during the relevant time period.  It simply does not speak to that issue.

Significantly, Paniagua chose not to take testimony from the NYCHA on this, or any other, point.  There is, accordingly, no testimony from the NYCHA as to the universe of smoke

---

[16] Kidde separately fairly notes that the Alarm could have been installed by a person or entity other than the NYCHA:  "Paniagua's mother, maintenance personnel, or any other individual with access to Paniagua's apartment could have independently purchased and installed a smoke alarm."  Def. Reply Br. 2.  For the purposes of this analysis, it is enough to note that even if one assumes that the NYCHA was necessarily the entity that selected and installed the Alarm, the evidence does not support a finding that the Kidde Model No. 916 and ESL Model No. 320 were the only two models installed by the NYCHA.

alarms that, during the relevant period, the agency was then installing in its apartments.  Nor is there testimony from the NYCHA as to the significance, if any, of the fact that its files today contain only two purchase orders for such products.  *Cf. Franklin v. Krueger Int'l, Inc.*, No. 96 Civ. 2408 (DLC), 1997 WL 691424, at *4 (S.D.N.Y. Nov. 5, 1997) (plaintiff's claim that he obtained numbered "markings" from the allegedly defective chair, which he argued identified it as a chair manufactured by defendant, could not serve as the basis for plaintiff's claim that defendant manufactured the chair where plaintiff "put in no additional evidence to elucidate . . . what these numbers represent").

It may be that the passage of time means that no NYCHA representative any longer recalls the agency's practices in the years 2002–2005 as to the smoke detector products it was then installing, and/or that there are no NYCHA records that squarely answer that question.  *See* Tr. 37 (statement by Paniagua's counsel that it is unlikely a NYCHA representative could testify as to what type of alarm was installed in the apartment).  But the onus was on Paniagua to establish, not assume, that fact, for example, through the testimony of a corporate representative of the NYCHA, pursuant to Federal Rule of Civil Procedure 30(b)(6).  And even if the universe of suppliers to the NYCHA of smoke alarms during the relevant period were lost to history, that would not justify holding Kidde liable based on Paniagua's—or a factfinder's—unsupported speculation that the two surviving purchase orders demarcate the full universe of smoke alarms then being installed.  *See Phillocraft*, 2005 WL 2001902, at *5 ("Speculative or conjectural evidence of a manufacturer's identity is not enough." (citing *Healey*, 87 N.Y.2d at 602)); *accord In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 2008 WL 5188193, at *3.  Put differently, although Paniagua's status as a minor tolled for years the running of the statute of

limitations, it did not relieve him of the duty to support his claims with reliable, not conjectural, evidence.

On these points, particularly the need for reliable evidence as to the identity of the product alleged to have caused the plaintiff's injury, Judge Motley's decision in *Phillocraft*, *supra*, is illustrative.  There, Winstead sued Phillocraft for injuries sustained as a result of her use of a chair at the New York Transit Authority ("NYTA") on June 7, 2000.  2005 WL 2001902, at *1.  The NYTA had not maintained records of the types of chairs that had been issued to particular booths, let alone the invoice or purchase order receipt corresponding to the allegedly defective chair.  *See id.* at *5–7.  Winstead's only documentary evidence as to the chair's manufacturer was (1) a letter from the NYTA confirming that between February, 1999 and September, 2001, it had purchased approximately 900 Phillocraft chairs; and (2) a copy of an invoice from Phillocraft, dated January 10, 2001, for the sale of 30 chairs to the NYTA.  *Id.* at *6.

Judge Motley held that this evidence was not enough to establish that Phillocraft had manufactured the chair that caused Winstead's injury.  *Id.* at *7.  As she explained, although the records confirmed that the NYTA had purchased *some* chairs from Phillocraft during the relevant time frame, they did "not contain any information indicating that the *subject chair* was manufactured by Phillocraft."  *Id.* (emphasis in original).  And, she noted, while "[t]he fact that Phillocraft sold chairs at various times to the [NYTA] raises the possibility that the chair in question was manufactured by [Phillocraft[,] . . . [i]t does not . . . establish that it is reasonably probable that the chair involved in plaintiff's accident was manufactured by Phillocraft."  *Id.*  Judge Motley thus implicitly but clearly rejected the proposition that the mere existence of an invoice or purchase order for a given brand of chair excluded the possibility that the NYTA

might have concurrently purchased *other* types of chairs.  Accordingly, she concluded, Winstead had "failed to establish the identity of the manufacturer—an essential element of [her] claims," and had "not met her burden" of showing that there was a genuine issue of fact for trial.  *Id.* at *8.

The same logic controls here.  Although the blanket purchase orders produced by the NYCHA indicate that the NYCHA purchased *some* Kidde Model No. 916 and ESL Model No. 320 alarms, they do not suggest that these two models were the *only* types of alarms purchased by the NYCHA.  Accordingly, although the documents raise the "possibility that the [smoke alarm] in question" was of one of those two types, it does not render that conclusion "reasonably probable."  *Id.* at *7.  Such an inference is, if anything, more tenuous here than in *Phillocraft*: The passage of more than a decade since the installation of the Alarm makes it entirely plausible that records of other purchase orders were lost over time.  And Paniagua has not adduced any affirmation from the NYCHA to the effect that the records it produced in response to Fleming's FOIL request capture the totality of smoke alarms installed during the relevant period.[17] Paniagua, therefore, has not established that the Alarm was necessarily a Kidde Model No. 916 or an ESL Model No. 320.

Once this false dichotomy is exposed, Paniagua's case against Kidde crumbles.  Paniagua does not dispute that there were at least five other companies manufacturing smoke alarms in the United States during the timeframe in which the NYCHA replaced the alarm in his apartment.  *See* Pl. 56.1, ¶ 19.  Nor does he assert that none of these companies manufactured battery-

---

[17] That Kidde's subpoena (which sought all documents relating to the fire or smoke alarms installed in Paniagua's housing development) yielded more records than did Fleming's FOIL request (which sought all documents that would help identify the type of smoke alarm that was installed in Paniagua's apartment) further undermines the premise that the NYCHA's response to the FOIL request was comprehensive.

powered alarms.  Accordingly, a finding that the Alarm was battery-powered, while excluding

the ESL Model No. 320, would not, as Paniagua contends, exclude other candidates.  *See* Pl. Br.

1.  Rather, as Kidde fairly points out, "the fact that the [Alarm] may have been battery-powered

merely limits its product identification to the myriad different brands and models of battery

powered smoke alarms manufactured by numerous companies at the relevant time period."  Def.

Reply Br. 3.

       Claudio's attestation that, during the fire, she observed a blinking red light on the ceiling

is similarly insufficient to identify Kidde as the "reasonably probable" manufacturer of the

Alarm.  This description is consistent with the Model No. 916's flashing LED light feature.  *See*

Pl. 56.1, ¶¶ 42–43; Def. Supp. 56.1, ¶¶ 42–43.  But Paniagua has not claimed, much less adduced

supporting evidence, that this feature is unique to Kidde smoke alarms.  And Kidde, for its part,

has produced uncontradicted evidence that refutes such a claim.  *See* Fazio Supp. Decl., Ex. 8, at

¶ 3 (attestation of Larry Ratzlaff, senior product engineer for Kidde, that "[t]he existence of an

LED light on any given smoke alarm cannot be used to identify its manufacturer, nor to identify

it as being of any particular make, model, or type" because "most alarms contain such an LED

light").

       This case is thus readily distinguished from *Treston v. Allegretta*, 581 N.Y.S.2d 289 (1st

Dep't 1992), on which Paniagua relies.  In that case, Treston had sued a motel, a pool lining

company (Dover), and two vinyl manufacturers (Stauffer and Union Carbide) for personal

injuries sustained when she misjudged the depth of the motel's pool due to the color of the vinyl

pool lining.  *Id.* at 290.  The lining had been destroyed before Treston brought suit, leaving no

conclusive proof as to the identity of the manufacturer of the vinyl in question.  *Id.* at 290–91.

However, the record showed that Dover had purchased vinyl from only four suppliers (Stauffer,

Union Carbide, Harte, and Formosa Plastics), *id.* at 290, and two (Harte and Formosa Plastics) could be excluded as the supplier of the offending liner.[18]  The Appellate Division, reviewing the factual record, held that Treston had "presented sufficient circumstantial evidence to warrant submission of the issue of whether Stauffer or Union Carbide supplied the vinyl in question to the trier of facts." *Id.* at 290.  In so holding, the court reasoned that the "trier of the facts, through circumstantial evidence and by the process of elimination," could identify one of those two defendants as the supplier of the allegedly defective vinyl.  *Id.* at 290–91.

In contrast, here, there is no evidence that the NYCHA purchased smoke alarms during the relevant period from only a defined subset of manufacturers.  And Paniagua has not adduced evidence excluding the five other companies identified by Kidde as having manufactured smoke alarms in the United States during the relevant time period.  *See Baum v. Eco-Tec, Inc.*, 773 N.Y.S.2d 161, 163 (3d Dep't 2004) ("[P]laintiff cannot rely on the theory of alternative liability to prevail due to the fact that plaintiff has not identified the alternative manufacturer/supplier of the [product] and, thus, cannot show that all potential tortfeasors are present in the case.").  To prevail based on the reasoning in *Treston*, Paniagua would have to exclude all battery-powered alarms meeting the description given of the alarm in his apartment (*e.g.*, having an LED light), not merely the ESL Model No. 360 photoelectric alarm.  Paniagua, apart from assuming that the two purchase orders provided in response to Fleming's FOIL represent the full universe of smoke detectors then installed by the NYCHA, has not even attempted to satisfy this burden.[19]

---

[18] Liners made with Formosa Plastics vinyl were "logged in Dover's records with a special Taiwan designation, which was clearly absent from Dover's records of the liner in question"; and Dover's president testified that, based on his personal recollection, Dover did not purchase from Harte vinyl of the type used in the motel pool's liner.  *Id.* at 291.

[19] On the contrary, Paniagua erroneously argues that "[t]he fact that there were other . . . companies involved in the sale of smoke detectors . . . [in] 2004" is irrelevant and "has no

*Otis v. Bausch & Lomb Inc.*, 532 N.Y.S.2d 933 (2d Dep't 1988), on which Paniagua also relies, is similarly inapposite.  There, Otis brought suit, claiming she had been injured by contact lenses manufactured by Bausch & Lomb ("B&L").  *Id.* at 933–34.  Although Otis had discarded the lenses that had injured her, she came forward with documentary proof that she had been fitted with B&L lenses one year before the incident, and had twice thereafter replaced her lenses under an insurance policy covering "B & L Softlens SV."  *Id.* at 934.  And, "there [was] no suggestion by [B&L] that any other brand of lenses was supplied to [ ] Otis."  *Id.*  On that basis, the Second Department held that Otis had supplied "a sufficient foundation of fact . . . to create a triable issue as to whether [B&L] was the manufacturer of the product."  *Id.*

The evidence in *Otis* is a far cry from that here.  In contrast to *Otis*, where there was evidence that the plaintiff had previously bought the defendant's product, here the NYCHA has definitively stated that "there are no records revealing the specific [alarm] model that was installed in [Paniagua's apartment] on the night of the fire."  Def. Supp. 56.1, ¶ 47.  And Kidde has come forward with evidence that multiple alternative brands of smoke alarms were available for purchase during the relevant time period.  Def. 56.1, ¶ 19.[20]

This case instead more closely resembles *Campagno v. IPCO Corp.*, 524 N.Y.S.2d 138 (Sup. Ct. Suffolk Cty. 1987), which the *Otis* court distinguished on the ground that, in *Campagno*, "the evidence suggested that the [product] in question could have been supplied by

---

bearing on whether the NYCHA installed battery-powered smoke detectors other than Kidde ionization smoke detectors."  Pl. 56.1, ¶ 19.

[20] *Hackert v. First Alert, Inc.*, 2005 U.S. Dist. LEXIS 46141 (N.D.N.Y Nov. 15, 2005), a product liability suit against another manufacturer of ionization smoke alarms on which Paniagua relies, is also inapposite.  In that case, although there were five smoke alarms manufactured by different companies in the plaintiffs' home, it was undisputed that two of the alarms, which did not sound during the fire, were manufactured by the defendants.  *Id.* at *2–3, *6.  Product identification, therefore, was not at issue, and *Hackert* is not relevant here.

one of five or six different suppliers." *Otis*, 532 N.Y.S.2d at 934 (citing *Campagno*, 524 N.Y.S.2d at 140 (defendant lens supplier was entitled to summary judgment where plaintiff had "provided no stronger evidence than the statement that 'in all probability' [that defendant] is the party liable")). Other New York cases are in accord. *See, e.g.*, *Healey*, 87 N.Y.2d at 602–03 (plaintiff's proof insufficient to establish reasonable probability that defendant manufactured allegedly defective tire rim, where there was uncontested evidence that at least six other companies manufactured same type of rim); *D'Amico*, 569 N.Y.S.2d at 964 (defendant ladder manufacturer was entitled to summary judgment where evidence showed that plaintiff's employer purchased ladders from two manufacturers and there was no evidence to support an inference that defendant manufactured the ladder that allegedly injured plaintiff).

In sum, as in *Campagno*, *Phillocraft*, *Healey*, and *D'Amico*, finding liability here would require the finder of fact to engage in unacceptable conjecture. It would require the factfinder to assume that Kidde, as opposed to any other company that produced like products, manufactured the Alarm, despite the absence of proof allowing those companies to be excluded. Accordingly, even viewing the facts in the light most favorable to Paniagua, there is insufficient circumstantial evidence to render it "reasonably probable, not merely possible or evenly balanced" that Kidde was the source of the allegedly defective alarm. *Healey*, 87 N.Y.2d at 601.

Paniagua, therefore, has failed to establish a genuine issue of fact as to an essential element of each of his claims. Kidde is thus entitled to summary judgment in its favor.[21]

---

[21] In so holding, the Court of course is sympathetic to Paniagua. If a defective smoke alarm in fact contributed to the tragic consequences of the fire, it is regrettable that relief is unavailable to him. But a cardinal precept of our justice system is that relief against a defendant requires satisfactory evidence, not mere speculation, as to its liability. *See Longo v. Imperial Toy Corp.*, 306 F. Supp. 2d 199, 203 n.2 (N.D.N.Y. 2004). Paniagua has not adduced such evidence, as to Kidde, here.

## CONCLUSION

For the foregoing reasons, the Court grants Kidde's motion for summary judgment. The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 21 and 32 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 27, 2016
       New York, New York